**WO**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tony Ward, | No. CV-20-08239-PCT-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff challenges the denial of his application for disability insurance benefits under Title II of the Social Security Act ("the Act") by Defendant, the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"). Plaintiff filed a Complaint with this Court seeking judicial review of that denial (Doc. 1), and the Court now addresses Plaintiff's Opening Brief (Doc. 18, Pl. Br.), Defendant's Answering Brief (Doc. 21, Def. Br.), and Plaintiff's Reply (Doc. 29, Reply). The Court has reviewed the briefs and Administrative Record. (Doc. 17, AR.) The Court now reverses the Administrative Law Judge's ("ALJ") decision and remands for additional proceedings.

## I.    PROCEDURAL HISTORY

On October 18, 2016, Plaintiff filed an application for disability insurance benefits alleging disability beginning July 29, 2016. (AR. at 239-42.) The Social Security Administration ("SSA") denied Plaintiff's application at the initial and reconsideration levels of administrative review (AR. at 106-11, 113-19), and Plaintiff timely requested a hearing before an ALJ. (AR. at 120-23.) ALJ Betty J. Barbeito conducted a hearing by

1    video teleconference on July 9, 2019. (AR. at 39-70.) At that hearing, Plaintiff, a vocational

2    expert ("VE"), and a medical expert ("ME") testified. On September 27, 2019, the ALJ

3    issued an unfavorable decision. (AR. at 24-36.) In a letter dated July 14, 2020, the Appeals

4    Council denied review. (AR. at 1-6.) Plaintiff then filed an action in this Court. (Doc. 1.)

5    **II.     THE SEQUENTIAL EVALUATION PROCESS AND JUDICIAL REVIEW**

6          To determine whether a claimant is disabled for purposes of the Act, the ALJ

7    follows a five-step process. *E.g.*, 20 C.F.R. § 404.1520(a)(4). The claimant bears the

8    burden of proof at the first four steps, but the burden shifts to the Commissioner at step

9    five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ

10   determines whether the claimant is engaging in substantial, gainful work activity. 20 C.F.R.

11   § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe"

12   medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At

13   step three, the ALJ considers whether the claimant's impairment or combination of

14   impairments meets or is medically equivalent to an impairment listed in Appendix 1 to

15   Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is

16   disabled. *Id.* If not, the analysis proceeds to step four, where the ALJ assesses the

17   claimant's residual functional capacity ("RFC") and determines whether the claimant is

18   still capable of performing his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the

19   claimant can perform his past relevant work, he is not disabled. *Id*. If he cannot, the analysis

20   proceeds to the fifth and final step, where the ALJ determines if the claimant can perform

21   any other work in the national economy based on his RFC, age, education, and work

22   experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant cannot, he is disabled. *Id.*

23         This Court may set aside the Commissioner's disability determination only if the

24   determination is not supported by substantial evidence or is based on legal error. *Orn v.*

25   *Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but

26   less than a preponderance; it is relevant evidence that a reasonable person might accept as

27   adequate to support a conclusion considering the record as a whole. *Id.* In determining

28   whether substantial evidence supports a decision, the court must consider the entire record

1    and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.*
2    As a general rule, "[w]here the evidence is susceptible to more than one rational
3    interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be
4    upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

5    **III.   THE ALJ DECISION**

6           In her decision, the ALJ concluded Plaintiff had not engaged in disqualifying
7    substantial, gainful work activity during the relevant period, and that he suffered from
8    medically-determinable, severe impairments including cardiomyopathy, congestive heart
9    failure, seven-vessel bypass surgery, an aortic aneurysm, emphysema, chronic pancreatitis,
10   and type II diabetes. (AR. at 26-27.) The ALJ concluded Plaintiff's mental health
11   impairments "do not cause more than minimal limitation in [his] ability to perform basic
12   mental work activities and are therefore nonsevere." (AR. at 26.) At step three, the ALJ
13   summarily concluded Plaintiff had no impairment meeting or medically equivalent to a
14   listed impairment. (AR. at 27.) The ALJ found Plaintiff could perform light work including
15   the ability to lift 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk for
16   six hours each; push and pull weights within Plaintiff's lifting and carrying restrictions;
17   occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; and never
18   climb ladders, ropes, or scaffolds. (AR. at 27.) The ALJ found Plaintiff must avoid
19   concentrated exposure to cold, heat, humidity, fumes, odors, dust, gases, poor ventilation,
20   hazardous machinery, and heights. (AR. at 27.) After summarizing the medical evidence,
21   the ALJ assigned "little weight" to the opinion of Plaintiff's treating physician and his
22   Department of Veterans Affairs disability rating; "significant weight" to the opinions of
23   the state agency physicians at the initial and reconsideration levels of administrative
24   review; "great weight" to their counterparts assessing Plaintiff's psychiatric functioning;
25   "some weight" to the medical expert who testified at Plaintiff's hearing; and "little weight"
26   to the psychological consultative examiner. (AR. at 29-30.) The ALJ concluded Plaintiff
27   could perform his past relevant work as a Medical Case Manager (as actually and generally
28   performed), and as a Registered Nurse ("RN") (as actually performed). (AR. at 30.)

1    **IV.    DISCUSSION**

2           Plaintiff presents five issues on appeal: (1) whether the ALJ's adoption of erroneous

3    VE testimony warrants remand; (2) whether the ALJ's failure to include mental limitations

4    in Plaintiff's RFC warrants remand; (3) whether the ALJ's failure to assess Plaintiff's

5    visual impairments warrants remand; (4) whether the ALJ's partial rejection of the ME's

6    opinion warrants remand; and (5) whether the Commissioner's for-cause removal

7    protection in the Act violates the U.S. Constitution and strips ALJs and Appeals Officers

8    of authority to hear and decide claims. (Pl. Br. at 1-2.) The Court finds reversible error on

9    issues (1) and (4) and remands for further proceedings.

10   **a.    The ALJ relied on erroneous VE testimony.**

11          At the hearing, the VE testified Plaintiff engaged in past relevant work as an RN,

12   designated by Dictionary of Occupational Titles ("DOT") code 075.364-010, performed at

13   the medium exertional level, and requiring job skills at a specific vocational preparation

14   ("SVP") level of seven. (AR. at 66.) The VE also testified Plaintiff performed work as a

15   "Medical Case Manager," designated by DOT code 075.117-010, generally performed at

16   a sedentary level of exertion, and also consistent with SVP-seven work.[1] (AR. at 66.) The

17   VE testified Plaintiff actually performed each job at the light level of exertion. (AR. at

18   66-67.) The VE further testified his opinion was consistent with the DOT and otherwise

19   based on his experience as a vocational consultant. (AR. at 66.) In response to a

20   hypothetical question from the ALJ matching the RFC in the decision, the VE concluded

21   Plaintiff could perform both of his past jobs. (AR. at 67-68.) In the decision, the ALJ

22   adopted the VE's testimony and concluded Plaintiff could perform his past relevant work

23   as a Medical Case Manager as actually performed (light) and generally performed

24   (sedentary), and as an RN as actually performed (light). (AR. at 30.) The ALJ concluded

25   Plaintiff was not disabled at step four based on his ability to perform these jobs. (AR. at

26   30.) The ALJ did not identify alternative jobs at step five. (AR. at 30-31.)

27

28   ---
     [1] Plaintiff notes the correct SVP level for the job designated by that DOT code is eight, not
     seven. (Pl. Br. at 4 n.1.)

In his first assignment of error, Plaintiff argues the DOT code 075.117-010—which the VE testified denotes the job of Medical Case Manager—actually denotes the job of "Consultant, Education, State Board of Nursing," and that Plaintiff never performed this job. (Pl. Br. at 4-7.) Plaintiff argues the VE's misclassification of this job "call[s] into question the soundness of his entire testimony." (Pl. Br. at 7.) Defendant responds that the ALJ was not required to rely upon the testimony of the VE at step four at all, and that she was well within her province to conclude Plaintiff could perform the job of Medical Case Manager, as he actually performed it, without relying on VE testimony. (Def. Br. at 24-25.) Alternatively, Defendant argues the VE identified another job at step four—Registered Nurse—which the ALJ also concluded Plaintiff could perform, and that any error regarding the Medical Case Manager job is therefore harmless. (Def. Br. at 25.)

As Defendant correctly observes, the VE identified two jobs at step four, only one of which is in question. (AR. at 30.) Plaintiff does not dispute he worked as an RN; he also acknowledges that he could perform that job with the RFC the ALJ adopted. (Pl. Br. at 4-7, Reply at 1-2.) Accordingly, the ALJ's finding that Plaintiff could perform his past relevant work as an RN (at the light exertional level) still holds up. The mischaracterization of one job at step four when the VE or ALJ identified other valid jobs would ordinarily be "inconsequential to the ultimate nondisability determination[,]" and thus, harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Lind v. Astrue*, 370 Fed. App'x. 814, 817 (9th Cir. 2010) (unpublished) ("Any error by the ALJ in considering jobs that did not qualify as past relevant work was harmless because the ALJ found that Lind could perform her past relevant work as a customer service representative, and the ability to perform one of her past jobs is sufficient to meet the standard.").

Importantly, however, the issue of the Medical Case Manager job is relevant to the ALJ's rejection of Dr. Yamour's testimony, which is addressed in further detail below. If Plaintiff is properly limited according to the ALJ's RFC, it is uncontested he can perform the RN job as he actually performed it.[2] (*See* Pl. Br. at 7, Reply at 2.) Dr. Yamour, however,

---

[2] Plaintiff argues in his Reply that he also raised the issue that his RFC did not incorporate all the limitations supported by the record, and that the excluded limitations would preclude

testified to the contrary that Plaintiff is limited to only sedentary work and, for the reasons explained in further detail below, the ALJ erred in rejecting Dr. Yamour's opinion. Hence, the issue of whether Plaintiff performed a job that is generally performed at the sedentary level is not inconsequential to this determination, and the Court's analysis must continue. *See Stout*, 454 F.3d at 1055

b.     **The ALJ did not err by failing to consider Plaintiff's mental health impairments at step two.**

At step two of the sequential evaluation process, the ALJ identified nine different medically-determinable impairments she deemed severe, but she excluded Plaintiff's depression and anxiety. (AR. at 26-27.) The ALJ concluded these mental impairments "do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere." (AR. at 26.) The ALJ found Plaintiff was only mildly limited in the four functional areas prescribed in the psychiatric review technique: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.[3] (AR. at 27.)

Plaintiff argues federal regulations require the ALJ to consider all of Plaintiff's impairments, including non-severe impairments, in determining RFC, and that the ALJ erred by failing to account for Plaintiff's mild mental limitations in the RFC. (Pl. Br. at 7-15.) Plaintiff argues these mental limitations, properly supported by the record, would impact his ability to perform his skilled past relevant work. (Pl. Br. at 12-15.) But, the ALJ is not required to account for an impairment in her RFC if that impairment does not cause significant limitations in Plaintiff's ability to perform work-related activities.

---

him from performing the RN job. (Reply at 2.) Consequently, Plaintiff argues that he is, in effect, challenging the Commissioner's conclusion he can perform the RN job. (Reply at 2.) Plaintiff does not, however, challenge that he performed that job at the light exertional level or that he could not perform that job with the RFC the ALJ adopted. (Pl. Br. at 4-7, Reply at 1-2.)

[3] Before assessing RFC, the regulations require the Commissioner to evaluate the severity of a claimant's mental impairments by applying a five-degree severity scale to four broad functional domains. 20 C.F.R. § 404.1520a

Although the Commissioner must consider all medically determinable impairments when evaluating RFC, "including[ ]medically determinable impairments that are not 'severe,'" 20 C.F.R. § 404.1545(a)(2),

> "The adjudicator must remember that the limitations identified in the [psychiatric review technique] are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions . . . ."

Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P, 1996 WL 374184, at *4 (S.S.A. July 2, 1996).

As such, there is no requirement that an ALJ copy the limitations she assigned in the psychiatric review technique to the RFC, or that every limitation assigned in the psychiatric review technique be accounted for in the RFC. *See Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (RFC must include all limitations supported by the record). In fact, there is ample persuasive authority to support the proposition that, in an RFC assessment, an ALJ need not account for mild mental limitations she identified in the psychiatric review technique if it can be shown she considered evidence of the claimant's mental limitations at step four (including treatment records, opinion evidence, and daily activities). *E.g.*, *Frary v. Comm'r of Soc. Sec.*, No. 1:20-CV-00260-SAB, 2021 WL 5401495, at *13-16 (E.D. Cal. Nov. 18, 2021) (collecting cases applying *Hutton v. Astrue*, 491 Fed. Appx. 850 (9th Cir. 2012)).[4]

Here the ALJ addressed evidence of Plaintiff's mental impairments beyond step two, noting in her discussion of RFC that Plaintiff generally presented for treatment with

---

[4] In *Hutton*, an unpublished case, the Ninth Circuit held an ALJ erred by failing to consider the claimant's non-severe mental impairment in the RFC determination, despite assigning mild limitations in the psychiatric review technique. *Hutton*, 491 Fed. App'x. at 850-51. As discussed at length in *Frary*, however, numerous lower courts of this Circuit applying this case have distinguished it where there is evidence the ALJ considered Plaintiff's mental limitations in formulating the RFC. *Frary*, 2021 WL 5401495, at *13-16.

1   normal mental status signs, including "normal behavior, affect, judgment, insight, thought

2   content, alertness, and orientation." (AR. at 29.) The ALJ also explained her evaluation of

3   the opinion evidence regarding Plaintiff's psychological functioning. (AR. at 30.)

4   Substantial evidence supports the ALJ's conclusion Plaintiff's mental impairments do not

5   cause a significant limitation of his functioning.

6       Plaintiff had no sustained, specialized mental health treatment during the relevant

7   period,[5] and his other providers routinely documented that he presented as alert and

8   oriented, with normal judgment, and conversive, linear thoughts. (AR. at 612, 638, 657,

9   813, 842, 851, 860, 866, 902.) Dr. Megan Stafford, the psychologist who interviewed and

10  examined Plaintiff at the behest of the state agency in November 2016, documented that

11  Plaintiff was alert, oriented, "[c]ooperative[,] and pleasant," with a restricted affect,

12  "impairment in expressive language," normal thought processes and content, intact

13  memory, fair insight and judgment, and the ability to make simple calculations and to

14  interpret abstractions. (AR. at 591-92.) Dr. Stafford assigned to Plaintiff mild-to-moderate

15  limitations in functioning (AR. at 593), but the ALJ rejected Dr. Stafford's opinion (AR.

16  at 30), and Plaintiff does not expressly challenge this as error. (Pl. Br. at 7-15.) In fact,

17  Plaintiff does not argue that true functional limitations are even supported. (Pl. Br. at 7-15.)

18  Instead, Plaintiff argues the mild limitations from his psychiatric review technique should

19  have translated into functional limitations in the RFC, and that the ALJ's omission of such

20  limitations is harmful because of Plaintiff's demanding and skilled past work. (Pl. Br. at

21  7-15.)

22      It is clear, however, that mild limitations from the psychiatric review technique need

23  not always translate into functional limitations in the RFC. *E.g.*, *Frary*, 2021 WL 5401495,

24  at 13-19; *cf. Solomon v. Comm'r of Soc. Sec. Admin.*, 376 F. Supp. 3d 1012, 1021-22 (D.

---

[5] In disability reports completed with his assistance throughout the administrative process,
Plaintiff named all his providers and medications. (AR. at 276-79, 307-309, 319-20, 335).
Plaintiff did not report treatment with a mental health professional, but he did indicate his
primary care physician prescribed medications for depression and anxiety. (AR. at 275,
311, 322, 336.) At his visit with Dr. Stafford, the psychological consultative examiner,
Plaintiff denied ever receiving psychotherapy, but reported he is prescribed medications to
treat psychological symptoms from his primary care physician. (AR. at 591.)

Ariz. 2019) (distinguishing other cases finding no error on the grounds that, in those cases, the record showed the ALJ considered mental impairments at the RFC phase). An ALJ need not include limitations in the RFC that are not supported in the record. *See*, *e.g.*, *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) (VE hypotheticals need only incorporate functional limitations supported by substantial evidence in the record); *Thomas*, 278 F.3d at 956. Because it can be shown the ALJ considered Plaintiff's mental impairments at step four, and that her determination to exclude mental limitations from the RFC is supported by substantial evidence, there is no error.

**c.    The ALJ did not err by failing to account for Plaintiff's vision impairment.**

Plaintiff argues he reported the onset of a visual impairment to the SSA in November 2016 and submitted evidence of it in the form of treating notes and objective testing. (Pl. Br. at 15-17.) Despite this, Plaintiff argues the ALJ failed to consider the impairment at any step of the sequential evaluation process, and that she was required to do so. (Pl. Br. at 15.)

Defendant counters an ALJ is not required to discuss or acknowledge *all* evidence— only that which is "significant" or "probative." (Def. Br. at 16.) Defendant argues "not one physician, treating or consultative, indicated any vision problems upon examination, suggested any corrective procedures, or opined that Plaintiff had any visual limitations." (Def. Br. at 17.) Defendant notes the state agency consultants "specifically opined Plaintiff had no visual limitations." (Def. Br. at 17.) Alternatively, Defendant argues the ALJ's omission of the impairment is harmless error. (Def. Br. at 17.)

Plaintiff's disability determination from the reconsideration level reflects that he reported developing cataracts bilaterally resulting in "hazy vision." (AR. at 87.) As early as September 2014—well before his alleged disability onset date—Plaintiff exhibited no diabetic retinopathy, but "[l]arge optic nerve cupping" upon examination bilaterally. (AR. at 433.) Plaintiff reported his recent glaucoma and cataracts diagnoses to Dr. Stafford, but Plaintiff did not appear to have difficulty seeing during that examination. (AR. at 590-92.) In his function report from that same month, Plaintiff reported "[b]lurred vision from

glaucoma [and] cataracts[,] nuclear [and] subscapular [with] difficulty reading [and] computer work[.]" (AR. at 282.) In December 2016, ophthalmologist Susan Longar, M.D. documented "likely optic nerve trauma" resulting from a traumatic brain injury and temporary cortical blindness. (AR. at 622.) She diagnosed optic neuropathy, suspected glaucoma, and a cortical senile cataract in both eyes. (AR. at 623.) Plaintiff's visual impairment began appearing in his past medical history as documented in his treatment notes. (AR. at 668, 679, 683, 699, 703, 711.) Plaintiff's attorney reported in a January 2017 letter Plaintiff's diagnosis and referral for treatment for these conditions. (AR. at 19-20.) In a July 2017 ophthalmology examination, providers could not assess for diabetic retinopathy, but noted optic nerve damage bilaterally. (AR. at 829.) In a teleretinal screen one year later, Plaintiff described declining vision. (AR. at 798.) The provider at this visit again noted an abnormal optic nerve and a cataract of suspected visual significance. (AR. at 804.) In other examinations or treatment visits, Plaintiff denied eye problems or exhibited no problems during eye examinations. (AR. at 679, 771, 813.) In some of his more recent visits, his eye impairment was not listed among his "active" medical problems or diagnoses or mentioned in his subjective report to his providers. (AR. at 841, 843, 850, 852, 858, 860, 863-64, 866, 869-70.)

Despite Plaintiff's reports and sporadic testing for visual deficits during the relevant period, the Court finds the evidence of Plaintiff's visual impairment is not "significant" or "probative," and hence, the ALJ was not required to discuss it. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012). The diagnosis and treatment of a medical condition are often insufficient to arise to the level of "significant" or "probative" evidence, unless the claimant adduces evidence of a functional limitation linked to that impairment. *E.g.*, *Eduardo Corona M. v. Berryhill*, No. 2:17-CV-09061-AFM, 2019 WL 718111, at *3-4 (C.D. Cal. Feb. 19, 2019) (unpublished) (citing *Hiler* and collecting cases). "The mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). While the Commissioner must at least consider each impairment when formulating an RFC, *see* 20 C.F.R. § 404.1545(a)(2), Plaintiff must

present evidence showing the diagnosed impairment causes some significant functional limitation. *E.g.*, *Houghton v. Comm'r Soc. Sec. Admin.*, 493 Fed. App'x. 843, 845-46 (9th Cir. 2012) (unpublished).

Here, the evidence falls short of that, and the Commissioner correctly observes that no physician of record assigned any limitation to account for Plaintiff's cataracts, optic nerve damage, or neuropathy. (Def. Br. at 17.) While Plaintiff could argue that his statements in the record reporting his diagnoses, treatment, "blurred vision," and "difficulty reading," could rise to this level, it is clear the ALJ rejected Plaintiff's symptom testimony (AR. at 28), and Plaintiff does not explicitly challenge that finding. Here, the existing evidence is sufficient to establish a diagnosis, but not a connected functional impairment, and the burden is Plaintiff's at step four. *Tackett*, 180 F.3d at 1098. Consequently, the Court finds this evidence neither probative, nor significant, and finds there is no error.

**d.   The ALJ erred by rejecting the opinion of the medical expert without citing legally sufficient reasons.**

At Plaintiff's July 2019 hearing, board-certified cardiologist and internist Beverly Yamour, M.D., testified regarding Plaintiff's conditions and limitations. (AR. at 47-59.) She testified Plaintiff's conditions did not meet or medically equal a listed impairment. (AR. at 48-49.) Regarding RFC, while initially citing the physical limitations assigned by the non-examining physicians at the initial and reconsideration phases (AR. at 49-50), Dr. Yamour eventually concluded Plaintiff is limited to only sedentary work. (AR. at 58.) Dr. Yamour adopted the mental limitations assigned by the psychological examiner, Dr. Stafford. (AR. at 49.) In the decision, the ALJ assigned "some weight" to Dr. Yamour's opinion, accepting her conclusion Plaintiff's condition did not meet or equal a listing, but rejecting her opinion regarding RFC. (AR. at 29-30.) The ALJ reasoned,

> "[T]he medical expert's comments on [RFC] seemed to be merely citing to other opinions and activity evidence without making a formal determination. Even if the citations to the other opinions was [*sic*] intended to be a formal [RFC] assessment, the mental component of her testimony is suspect given

1    that she is a cardiologist rather than a psychiatrist or primary care physician."

2    (AR. at 29-30.)

3    Plaintiff argues the ALJ was required to explain why she did not accept the physical

4    limitations Dr. Yamour assigned, and that the ALJ's assertion that Dr. Yamour merely cited

5    others' opinions is invalid and insufficient to reject the opinion. (Pl. Br. at 17-18.)

6    Defendant counters the ALJ's rationale is sufficient, and that this Court must not reweigh

7    evidence. (Def. Br. at 22-23.)

8    **1.    The ALJ erred by rejecting Dr. Yamour's opinion with the reasons cited.**

9    Defendant cites the "specific and legitimate reasons" standard as the appropriate

10   standard to reject a medical opinion from a non-examining source that is contravened by

11   other evidence (Def. Br. at 22),[6] but "[t]he Commissioner may reject the opinion of a non-

12   examining physician by reference to specific evidence in the medical record." *Sousa v.*

13   *Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (internal citations omitted). In either case,

14   the ALJ's analysis falls well short of the standard.

15   The ALJ asserted Dr. Yamour "seemed to be merely citing to other opinions and

16   activity evidence without making a formal determination" regarding RFC (AR. at 29), but

17   this reasoning does not accurately recount Dr. Yamour's testimony. While initially citing

18   the opinions of other non-examining doctors regarding Plaintiff's physical limitations, Dr.

19   Yamour eventually concluded Plaintiff could only perform sedentary work. (AR. at 58.)

20   No other medical source in the record opined that Plaintiff is physically limited to sedentary

21   work. (AR. 80-82, 98-100, 590-94.) Consequently, the assertion that Dr. Yamour simply

22   rehashed other doctors' opinions is inaccurate, and this was the ALJ's only basis for

23   rejecting the physical limitations Dr. Yamour assigned. (AR. at 30.) Consequently, the ALJ

24   erred and, for the reasons explained further below, this error is not harmless.

25   _____

26   [6] Regulations effective March 27, 2017, replace the hierarchy of medical opinions
     recognized under prior case law. 20 C.F.R. § 404.1520c; *Woods v. Kijakazi,* 32 F.4th 785
     (9th Cir. 2022). For those claims filed before March 27, 2017, however, the previous
27   regulatory scheme still applies, *see* 20 C.F.R. § 404.1527, and the Commissioner must cite
     specific and legitimate reasons for rejecting the opinion of a treating or examining
28   physician that is contradicted by other evidence. *Lester v. Chater,* 81 F.3d 821, 830-31 (9th
     Cir. 1995), as amended (Apr. 9, 1996). Plaintiff filed his applications in October 2016.
     (AR. at 239-42.) Consequently, the previous regulatory scheme applies here.

**2.      The ALJ's error is not harmless.**

At step four, "[t]he claimant has the burden of proving an inability to return to his former type of work and not just to his former job." *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986). In the decision, the ALJ found Plaintiff could perform his past relevant work as a Medical Case Manager as he actually performed it (at the light exertional level), as it is generally performed (at the sedentary exertional level), and as an RN as actually performed (at light). (AR. at 30.) Dr. Yamour, by contrast, concluded Plaintiff is limited to only sedentary work. (AR. at 58.) With a limitation to sedentary work, Plaintiff is precluded from performing his past work as an RN (as actually and generally performed) and as a Medical Case Manager (as actually performed), because each requires greater exertion.[7] (AR. at 66-67.) Importantly, Plaintiff is not necessarily precluded from performing the Medical Case Manager position as it is generally performed, which the VE testified is a sedentary position. (AR. at 66.) As Plaintiff argued, however, the position the VE identified in the DOT does not correspond to Plaintiff's past relevant work. (Pl. Br. at 4-7.) The question remaining then, is whether Plaintiff performed past relevant work that is generally performed at the sedentary level.

Revisiting Plaintiff's first assignment of error, Plaintiff plausibly asserts that the DOT number, corresponding job description, and title of the sedentary job the VE identified as Medical Case Manager (listed as "Consultant, Educational, State Board of Nursing" in the DOT) are facially inapposite to Plaintiff's description of this job.[8] (Pl. Br. at 4-7.) Consequently, this Court cannot say that the ALJ's error is harmless. If Plaintiff has no sedentary past relevant work, the medical-vocational rules could direct a finding he

---

[7] *See* 20 C.F.R. § 404.1567 (defining the physical requirements of each exertional level).

[8] The job of "Consultant, Educational, State Board of Nursing" involves "maintaining educational standards established by [the] board," developing and implementing policies and philosophies of the board, surveying and advising educational institutions, and keeping up with general professional trends. 075.117-010 Consultant, Educational, State Board of Nursing, DICOT 075.117-010. In his work history reports, Plaintiff described this position as interacting with patients and providers to determine "discharge level" and "appropriate level of care." (AR. at 292.)

1    is disabled, as the VE testified Plaintiff had no transferable skills to other sedentary jobs.[9]

2    (AR. at 68.)

3           Defendant argues the ALJ need not call a VE at step four, and that the ALJ was free

4    to conclude Plaintiff could perform his past relevant work, as he actually performed it,

5    without relying on a VE's testimony or the DOT.[10] (Def. Br. at 24-25.) Importantly,

6    however, the sedentary RFC Dr. Yamour assigned would preclude Plaintiff from

7    performing the Medical Case Manager job at light exertion. Furthermore, while the law

8    may not require a VE at this stage, the ALJ nevertheless called one, and she relied on that

9    VE's testimony to conclude Plaintiff could perform his past relevant work. *See Bayliss v.*

10   *Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("An ALJ may take administrative notice

11   of any reliable job information, including information provided by a VE.") (citations

12   omitted). Defendant might be correct that a VE was unnecessary to begin with, but the

13   ALJ's reliance on erroneous VE testimony at step four still gives rise to a legal error. *See,*

14   *e.g.*, *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165-67 (9th Cir. 2008)

15   (holding ALJ erred by relying on VE testimony erroneously classifying Plaintiff's past

16   relevant work at step four). "Although the burden of proof lies with the claimant at step

17   four, the ALJ still has a duty to make the requisite factual findings to support [her]

18   conclusion[,]" *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001) (citations omitted),

19   and these findings must still be supported by substantial evidence, *e.g.*, *Vertigan v. Halter*,

20   260 F.3d 1044, 1051-52 (9th Cir. 2001). The Court cannot conclude the ALJ's step four

21   findings—at least with respect to the Medical Case Manager job—are supported by

22   substantial evidence here.

23          To begin, Plaintiff's disability reports list only past work as an RN. (AR. at 274.)

24
     _____

25   [9] *See* 20 C.F.R. pt. 404, subpt. P, app. 2, table 1.

26   [10] Defendant cites *Johnson v. Colvin*, 623 Fed. App'x. 326, 327 (9th Cir. 2015), among
     other cases, for the proposition that an ALJ need not consult the DOT at step four, because
27   an ALJ may find the claimant retains the ability to perform his past work as he actually
     performed it, and the DOT describes jobs as they are generally performed in the economy.
28   (Def. Br. at 24.) These cases are inapposite. The issue here is Plaintiff's work as it is
     generally performed in the economy.

His work history report also lists work as an RN for the past 15 years. (AR. at 291.) In this report, Plaintiff described his function as a "case manager" in one of the several RN positions he held,[11] but he also reported he walked for five hours per day in this job. (AR. at 292.) At his hearing, he estimated he was on his feet for three hours per day in this position. (AR. at 60.) In either case, the standing and walking requirements of the job are inconsistent with the limitations imposed by sedentary work.[12] At the initial and reconsideration levels of administrative review, Plaintiff's job was only characterized as a generic "RN." (AR. at 83, 101.) At his hearing, the ALJ asked the Plaintiff when he last worked and what position he performed. (AR. at 44.) Plaintiff explained he last worked as a staff case manager in 2016, but the ALJ did not further inquire regarding the exertional requirements of the job or the specific duties involved. (AR. at 44.)

Had the VE only cited the wrong DOT code for what was unquestionably the correct job, this discrepancy could amount to a harmless scrivener's error. *See Patterson v. Berryhill*, No. C17-5581-RSL, 2018 WL 1933741, at *4 (W.D. Wash. Apr. 24, 2018), *aff'd sub nom. Patterson v. Saul*, 812 Fed. App'x. 506 (9th Cir. 2020). Here, however, the DOT code the VE identified denotes an occupation Plaintiff says, and the evidence suggests, he did not perform. If the ALJ misclassified Plaintiff's past job under the DOT, "the [DOT] description applicable to that category is irrelevant to the determination of the exertional capacities required in [his] former occupation." *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986). Consequently, further evidence is needed to clarify the issue of Plaintiff's past relevant work.

In summary, the ALJ erred by rejecting Dr. Yamour's opinion for the reasons stated, and this error is not harmless. Further, the error raises an issue warranting a remand for additional proceedings. *Treichler v. Comm'r of Soc. Sec. Admin.*, 1102 (9th Cir. 2014)

---

[11] At his hearing, he testified the position was a "case manager." (AR. at 44.)

[12] *See* 20 C.F.R. § 404.1567(a) (defining sedentary work as involving only occasional standing and walking); Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work, SSR 96-9P, 1996 WL 374185, at *3 (S.S.A. July 2, 1996) ("'Occasionally' means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday.")

(finding additional proceedings useful to resolve conflicts or ambiguities). On remand, the ALJ should take additional evidence regarding the proper classification of Plaintiff's past relevant work and his ability to perform it.

**e.   Plaintiff's separation-of-powers claim does not warrant remand.**

The Court now briefly addresses Plaintiff's fifth and final assignment of error: that the Commissioner's for-cause tenure protection in the Act violates the U.S. Constitution on separation-of-powers grounds; that, consequently, the Commissioner's delegation of authority to the ALJ and other officers was invalid; and that Plaintiff was thus deprived of "a valid administrative adjudicatory process." (Pl. Br. at 22.) Consistent with recent Supreme Court and Ninth Circuit precedents, this Court finds Plaintiff's argument unavailing.

To begin, it is noteworthy that Plaintiff challenges the Commissioner's decision on separation-of-powers grounds, and not under the Appointments Clause. (Reply at 10) ("This appeal is not an Appointments Clause challenge as was true in the cases which led to the Supreme Court's decision in *Carr* . . ."). In *Lucia v. SEC*, the Supreme Court held that the appointment of an ALJ to the Securities and Exchange Commission violated the Appointments Clause of the Constitution because (a) the ALJ was an "Officer of the United States" within the scope of the clause, and (b) the ALJ was not properly appointed by the President, a court of law, or the head of a department in violation of the Appointments Clause. 138 S.Ct. 2044, 2055 (2018). In *Lucia*, the Court deemed the appropriate remedy for this constitutional defect was a remand to a new, properly-appointed ALJ. *Id.*

The distinction to separation-of-powers claims is material, as exhibited in *Collins v. Yellin*, where the Supreme Court held that despite an unconstitutional obstacle to a director's removal from office, "there was no constitutional defect in the statutorily prescribed method of *appointment* to that office[,]" and thus, "no reason to regard any of the actions taken . . . as void." *Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021) (emphasis added). The Supreme Court reasoned, "The unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office . . . ."

*Id*. at 1788 n. 23. As a result, any successful challenge to a statute on separation-of-powers grounds must include a showing of harm. *Id*. at 1788-89. Applying these precedents to precisely this issue, the Ninth Circuit recently held that the Commissioner's for-cause removal protection was unconstitutional, but severable from the Act, and that, absent a showing of harm, the Commissioner's decision would not be undone. *Kaufmann v. Kijakazi*, 32 F.4th 843, 849-50 (9th Cir. 2022). Plaintiff must do more than assert the unconstitutional removal provision exists; he must show how it plausibly caused him particularized harm. *See id*.

To begin, Defendant argues any conceivable harm alleged is causally severed from the unconstitutional removal provision because the appointments of all ALJs and Appeals Officers were ratified by an Acting Commissioner in July 2018, who was removable for cause under the Act.[13] (Def. Br. at 7-9.) In his Reply, Plaintiff strongly asserts this is irrelevant to the issue, the crux of which is the "constitutionally defective delegation of power" from the Commissioner to ALJs and other agency officers. (Reply at 10.) Still, Plaintiff has not convincingly distinguished the relevant precedents, which make clear that (a) an agency director whose statutory protection from removal violates separation-of-powers principles still possesses the power to carry out the duties of the office, and (b) a successful challenge on separation-of-powers grounds requires a showing of harm. *Collins*, 141 S. Ct. at 1787. Even without the ratification of these appointments, Plaintiff has not shown the requisite harm.

In his Opening Brief, he asserts that "the ALJ decided this case under regulations promulgated by [former Commissioner Saul] when Mr. Saul had no constitutional authority to issue those rules." (Pl. Br. at 22.) But Plaintiff's point is belied by the Supreme Court's holding in *Collins* and the Ninth Circuit's holding in *Kaufmann* as explained above: the Commissioner still had authority to carry out the duties of his office, the unconstitutional obstacle to his removal notwithstanding. *Collins*, 141 S. Ct. 1787-88;

---

[13] The ratification of these appointments is reflected in Social Security Ruling 19-1p: Titles II and XVI: Effect of the Decision in *Lucia v. Securities and Exchange Commission* On Cases Pending at the Appeals Council, 84 FR 9582-02, 2019 WL 1202036 (S.S.A. 2019).

*Kaufmann*, 32 F.4th at 849-50. Still, Plaintiff does not identify the rules Commissioner Saul promulgated, nor explain how they may have affected the outcome of his case. (Pl. Br. at 22.)

In his Reply, Plaintiff asserts that "'but for' the [Commissioner's] unlawful delegation of authority to this ALJ and the Appeals Council judges, those government actors could not have adjudicated and issued the adverse determinations which they did in this case. It is impossible to have a more direct 'but for' proof of causation than this." (Reply at 12.) Again, however, the Commissioner's delegation of authority was not unlawful if he still held the authority to carry out the powers of his office, *see Collins*, 141 S. Ct. 1787-88, and Plaintiff's assumption the outcome of his application would have been different before a new ALJ is entirely speculative. *Kaufmann*, 32 F.4th at 850 ("Claimant cannot meet her burden of showing actual harm with speculation alone.") Plaintiff offers no authority to support the proposition that the Commissioner's power to delegate his own authority somehow falls outside the ambit of power the Commissioner still holds in light of *Collins*.

Elsewhere in the Reply, Plaintiff addresses a litany of other injuries, including that "he did not receive a constitutionally valid hearing and adjudication from an ALJ to which he was entitled"; "he did not receive a constitutionally valid decision from an ALJ to which he was entitled"; "he received an unfavorable decision from this constitutionally illicit ALJ adjudication process"; "he did not receive a constitutionally valid adjudication process from SSA's Appeals Council to which he was entitled"; "he did not receive a constitutionally valid determination by the Appeals Council to which he was entitled"; and "he received an unfavorable determination from this constitutionally illicit Appeals Council adjudication process." (Reply at 8-9.) These alleged harms are unavailing, redundant, and possibly waived as Plaintiff failed to assert them in his Opening. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999). Again, however, all of these asserted injuries fail for the same reasons explained above: there is no constitutional infirmity to Plaintiff's adjudication if the former Commissioner retained the authority to carry out the duties of

his office. *See Collins*, 141 S. Ct. 1787-88. The Court finds Plaintiff has not alleged the requisite harm, and thus, declines to remand this case on separation-of-powers grounds.

**f.    Remand for additional proceedings is nevertheless appropriate on other grounds.**

Having determined the ALJ erred by improperly rejecting the opinion of the medical expert, Dr. Yamour, the Court now turns to the appropriate remedy. The "credit-as-true rule" applies if (1) the record is fully developed such that further administrative proceedings would not be useful; (2) the ALJ failed to provide legally sufficient reasons for rejecting evidence; and (3) the improperly discredited evidence compels a finding the claimant is disabled if the evidence is credited as true. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014).

Turning to the first prong, the Court concludes further proceedings will be useful to resolve the issue of whether Plaintiff performed sedentary past relevant work and whether he is precluded from performing that work given Dr. Yamour's opinion or other evidence. *Treichler*, 775 F.3d at 1102.

**IT IS THEREFORE ORDERED** reversing the September 27, 2019, decision of the Administrative Law Judge, (AR. at 24-31), and remanding this matter for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and to close this case.

Dated this 2nd day of September, 2022.

G. Murray Snow
Chief United States District Judge

- 19 -